## SPARKS *v.* ROBINSON.

Opinion delivered May 13, 1899.

USURY—PAROL EVIDENCE TO EXPLAIN WRITING.—A written instrument, reciting the sale of a sewing machine for $8, and providing that the seller may redeem it at the end of a month by repaying the $8, with ten per cent. added, may be shown by parol evidence to be a shift for a usurious loan of money. (Page 463.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

### STATEMENT BY THE COURT.

Appellee received of appellant the sum of $8, and turned over to him a sewing machine valued at $45. Appellee claims that she let appellant have the machine as security for the sum of $8 borrowed of appellant. Appellant contends that he

bought the machine of appellee. At the time of the transaction the following instrument was signed by appellant and appellee:

"No. 1865.                                          Price, $8.00.

"Absolute Bill of Sale to Capital Loan Office, 105 East Markham st., Little Rock, November 16, 1895.

"Sold with the right of redemption by R. J. Robinson, of 1526 North street, to W. A. Sparks one Singer sewing machine, for the sum of eight dollars. The vendor, undersigned, reserves the right to redeem said article by the 16th day of December, 1895, and to reimburse the price for said article. After that date, if said article is not redeemed as aforesaid, I, W. A. Sparks, become the absolute owner of same without default to vendor. W. A. Sparks is not responsible for the loss or damage of said article by fire, robbery or deterioration of any kind. It is further agreed and understood that no article will be shown or returned without this ticket of sale. This done and passed upon at Little Rock, Ark., on date aforesaid.

.    "MRS. R. J. ROBINSON, Vendor.

"W. A. SPARKS, Buyer."

The form of the ticket of sale, which the proof shows was issued monthly, was as follows: "This is to certify that if the holder of this certificate presents the same at my office, at 105 East Markham street, not later than thirty days from date, he has the option of purchasing any one article of merchandise in my place of business that is for sale at a price not to exceed ten per cent. above its actual cost; including one sewing machine, $8.00, if preferred. This offer will be void after thirty days from date. All goods bought and sold for cash.

[Signed]        "W. A. SPARKS."

One of these tickets, as indicated by the purported bill of sale *supra*, was issued to appellee when she signed the alleged bill of sale.

The testimony of appellee was to the effect that she borrowed of Sparks $8, and that she understood at the time that she was to pay eighty cents per month for the use of it. She stated that she left the machine with Sparks for the sole purpose of borrowing money on it. "There was nothing said," quoting the witness, "about interest when I pawned the machine, but I knew I would have to pay ten per cent. a month,

and when I went back next month he (Sparks) said the interest was eighty cents. I asked him if I could get the machine with $8, and he (Sparks) said: 'Not unless I paid the interest.'"

The testimony on behalf of appellant is in substance as follows: Sparks testified "that she, Mrs. Robinson, said she could get along on $8. I let her have $8 on the machine; that is, I bought it from her, and took a bill of sale for it." Nothing whatever was said about interest. She returned in about a month to pay interest, and to get him to keep the machine a month longer. He said he could not, and did not accept interest. He told her that if she took the machine then, it would cost her $8, and whatever she might be disposed to give in addition. She said she was going to move, and would like for him to keep it, as she didn't need it, and didn't want to be bothered with it. She then wanted to pay him a dollar per month storage on it. She offered eighty cents per month, saying it was the same amount other pawnbrokers would charge her interest. He (Sparks) accepted eighty cents per month, with the distinct understanding that it was not interest. Sparks further stated that he made no contract whatever for interest on any of his loans; that he trusted to a man's honor as to what he should pay him (Sparks) for the use of his money. He expected something for the use of the $8.

Sparks was corroborated by another witness as to the conversation between himself and Mrs. Robinson about storing the machine, and her offering $1.00 per month, and his refusing, and accepting 80 cents, and telling her at the time that he could not charge interest; that the law did not allow that.

The action was replevin. The court rendered judgment for appellee for the return of the machine, or its value, $45, and $25 damages.

*Fulk, Fulk & Fulk*, for appellant.

The sale passed title to appellant. 5 Ark. 161. Since the transaction was a *sale*, and not a borrowing of money, no question of usury can arise. 55 Ark. 268; Perley, Interest, 201–2. The intention to take and give usury must be present in the minds of both parties. Tyler, Usury, 103. Subsequent acts cannot taint an originally good contract with usury.

25 Ark. 258. The burden was on appellee to prove usury, and the presumption was against it. 40 N. Y. 248; 109 N. Y. 473. Usury must be specially pleaded to avail as a defense. 22 Ark. 409; 30 Ark. 135, 145.

*W. C. Adamson*, for appellee.

Findings of fact by the court sitting as a jury, or a verdict, will not be disturbed if supported by any evidence at all. 40 Ark. 144; 60 Ark. 250; 13 Ark. 474; 25 Ark. 89; 50 Ark. 511; 26 Ark. 360. The instrument executed by appellee was a mortgage, and not a sale. 38 Ark. 264; 31 Ark. 62. If a sale is a mere device to cover an usurious loan, its feigned character will not prevent a plea of usury. 47 Ark. 287; 55 Ark. 270. An *aggregatio mentium* is not necessary to usury. 37 Minn. 441; 1 Stew. 391; 62 Ark. 370. Usury is the *taking*, not the *bargaining for*, excessive interest. 62 Ark. 370; 1 Stew. (Ala.) 391; 26 Pa. St. 273. The defense of usury may be pleaded in a justice's court without a formal, special plea. 7 Ark. 146; 36 Ark. 501.

WOOD, J., (after stating the facts.)    There was evidence to support the finding that the transaction reflected by the above facts was a loan of money at the rate of ten per cent. per month, and that it was usurious and void.

The court was clearly justified in concluding that the instrument purporting to be a bill of sale, although absolute on its face, was intended by the parties as nothing more than a security for the money advanced. The right of redemption was reserved to the grantor in the face of the instrument, and the extraneous proof warranted the conclusion that the instrument was intended as a mortgage. *Stryker* v. *Hershy*, 38 Ark. 264. In case of a mortgage the mortgagee becomes the absolute owner, where there is a failure to pay, and no redemption.

The instrument itself, and the sale ticket given with it, show that the grantor had the privilege of redeeming in thirty days, by paying the principal and not exceeding ten per cent., and the proof shows that at the end of each month the eighty cents, or ten per cent. per month, was collected, and another sale ticket was issued granting the same privilege. And this might be continued *ad infinitum*. The law shells the covering, and

extracts the kernel. Names amount to nothing when they fail to designate the facts. We are of the opinion that the court was justified in concluding that the papers called "bill of sale" and "sale tickets" were nothing more or less than a shift for a usurious loan of money. *Tillar* v. *Cleveland*, 17 Ark. 287; *Ellenbogen* v. *Griffey*, 55 Ark. 270, and cases there cited.

The damages may be excessive, but this was not made a ground of the motion for new trial.

No written pleadings were necessary, and the proof raises the issue of usury.

Affirm the judgment.