W. J. SLEEPER AND OTTO GAGE D/B/A CAMEO
JEWELRY AND ENGRAVING SHOP v. BOB SWEETSER

5-4999                                   446 S. W. 2d 228

Opinion delivered October 27, 1969

*Ball & Gallman* and *John Lineberger,* for appellants.

*Estes & Story,* for appellee.

FRANK HOLT, Justice. This appeal results from granting appellee's motion for a summary judgment based upon the following transaction. The appellants gave $50 to appellee for a man's nine-diamond ring. Appellants received a standard bill of sale from appellee. As a part of the same transaction, appellants then signed and delivered to the appellee an option to repurchase agreement. By its terms the appellee retained

the right to repurchase the same ring for $55 within ten days upon presentation of the written option. Within this ten-day period the appellee gave appellants a $5 check for the purpose of having the option extended for an additional ten days. When appellee tendered $55 to appellants for the return of this diamond ring, the offer was refused by appellants with the explanation that appellee's $5 check had been returned due to insufficient funds and, therefore, the time had expired for appellee to exercise his option to repurchase.

In appellee's complaint as amended he alleged that although the agreements on their face appear to be a bill of sale and an option to repurchase, they are in effect merely a pawn-loan agreement by which he pawned his ring for $50 with the right to redeem it within ten days for an additional $5; that $5 of the $55 repurchase price provided in the option to repurchase constituted a usurious rate of interest in that it amounts to 10% for ten days, or 1% per day; that the contract should be rescinded and the diamond ring returned to appellee, or in lieu thereof, he be awarded $500 as the alleged value of the ring and that appellee was entitled to damages of $500 for appellants' unlawful detention of the ring. Appellants responded with a general denial. In answering appellee's request for admission of facts, appellants admitted the bill of sale agreement and option to repurchase agreement and denied that the option to repurchase had been extended for an additional ten days since appellee had given an insufficient funds check. Appellants also admitted that 70% of their inventory, based upon valuation, was used merchandise.

Appellee then filed a motion for summary judgment supported by his affidavit that he had entered into the sale and repurchase agreement; that the value of the diamond ring was $500; that, ''I retained an option to repurchase the ring mentioned above for $50 plus an additional $5 interest within ten days from the execution of the bill of sale agreement dated January 10,

1968. I understood the entire transaction to be a pawn-loan agreement''; that he gave appellants his $5 check for a ten-day extension to repurchase his ring; that later his tender of $55 to appellants for the return of his ring was refused on the basis that he had not exercised his option in the repurchase agreement within the agreed extension of time since his $5 check was returned unpaid due to insufficient funds. The appellants did not file a counter affidavit.

In granting the summary judgment the trial court found:

"That the defendants did not file any counter affidavits or pleadings in response to plaintiff's Motion for Summary Judgment and as a result thereof there is no genuine issue as to any material fact."

The court further found that the transaction between the parties is a "shift or device for usurious loan of money;" that as a result the appellee is entitled to the return of the diamond ring or its value in the sum of $500 and the further sum of $500 as damages for appellants' wrongful detention of the ring. Appellee now concedes that the record does not support an award of $500 as damages for the unlawful detention of the ring and offers a remittitur in that amount.

For reversal the appellants, through their present counsel, contend that the bill of sale and repurchase agreement on their face constitute a fact issue. Appellants say that: "The Bill of Sale agreement in question reflects on its face that the appellee made a bona fide sale of a diamond ring to appellants. The Option to Repurchase agreement reflects on its face that a bona fide right was vested in appellee to repurchase the ring within the option period for the stated amount. There is no language in either of these agreements reflecting that the transaction between the parties was one of borrowing and lending of money as alleged by the appellee

and the lower court erred in finding the latter to be the case as a matter of law."

Appellee takes the position that the pleadings, appellants' answers to appellee's request for admission of facts, and appellee's uncontroverted affidavit present a transaction which was a mere shift or device for a usurious loan of money. He cites *Sparks* v. *Robinson,* 66 Ark. 460, 51 S. W. 460 (1899). There we held that a sale and an option to repurchase based upon written instruments in a transaction similar to the one at bar constituted "a shift for a usurious loan of money." We said:

> "The instrument itself, and the sale ticket given with it, show that the grantor had the privilege of redeeming in thirty days, by paying the principal and not exceeding ten per cent., and the proof shows that at the end of each month the eighty cents, or ten per cent per month, was collected, and another sale ticket was issued granting the same privilege. And this might be continued ad infinitum. The law shells the covering, and extracts the kernel. Names amount to nothing when they fail to designate the facts. We are of the opinion that the court was justified in concluding that the papers called 'bill of sale' and 'sale tickets' were nothing more or less than a shift for a usurious loan of money."

A 1967 amendment to our summary judgment statute provides, in pertinent part:

> "(e) * * * Defense Required. * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if ap-

propriate, shall be entered against him." Ark. Stat. Ann. § 29-211 (Supp. 1967).

In *Ray Deam et al* v. *O. L. Puryear & Sons, Inc.,* 244 Ark. 18, 423 S. W. 2d 554 (1968), we said:

> "* * * The opposition to the motion cannot always successfully take his stand on the content of his pleading alone. If the movant makes a case for summary judgment the opponent must come from behind 'the shielding cloak of formal allegations and demonstrate a genuine issue.' "

See, also, *Weldon Douglas et al* v. *The Citizens Bank of Jonesboro,* 244 Ark. 168, 424 S. W. 2d 532 (1968), and *Epps* v. *Remmel,* 237 Ark. 391, 373 S. W. 2d 141 (1963).

We recently had occasion to consider the effect of a failure to respond to an affidavit supporting a motion for summary judgment in *Ashley* v. *Eisele,* 247 Ark. 281, 445 S. W. 2d 76 (1969). There we said that the failure to file counter affidavits does not in itself entitle the moving party to a summary judgment. However, the effect is to leave the facts asserted in the uncontroverted affidavit supporting the motion for summary judgment accepted as true for purposes of the motion.

In the case at bar appellee's complaint asserted a pawn-loan arrangement with an illegal rate of interest. Appellants responded with a general denial. In a request for admissions appellants admitted that 70% of the value of their inventory consisted of used goods. Thereafter, appellee's uncontroverted affidavit, which must be accepted as true, asserted that this was a pawn-loan transaction *with a usurious rate of interest.* In our view when the established law is applied, the appellee has met the burden of demonstrating that no material issue of fact exists since his affidavit stands uncontroverted. The trial court did not err in granting a summary judgment in favor of the appellee.

With exception of the award of $500 for damages for wrongful detention of the nine-diamond ring, conceded by appellee as error, the judgment is affirmed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent, because I think the court is departing from its previous position on summary judgments. I do not believe that the summary judgment procedure has been properly utilized in this case. This very wholesome process for eliminating claims and defenses without merit and thus expediting the disposition of litigation was not intended to be a vehicle for bypassing jury trials or for early prediction of the outcome of litigation, however obvious it might seem. We have always been very strict in resolving every doubt against a summary judgment. See, e. g., *Russell* v. *City of Rogers*, 236 Ark. 713, 368 S. W. 2d 89; *Wirges* v. *Hawkins*, 238 Ark. 100, 378 S. W. 2d 646; *Deam* v. *O. L. Puryear & Sons, Inc.*, 244 Ark. 18, 423 S. W. 2d 554.

I cannot subscribe to the very cursory manner in which two written documents have been held to be something other than what they appear to be. This court has always unhesitatingly looked behind the "covering" to "extract the kernel" in removing the shielding cloak from any usurious transaction. Our zeal in doing so has not caused us to depart from the rules in such cases however, that the burden is upon one asserting usury to show that the transaction is usurious, and that usury will not be presumed, imputed or inferred when the opposite conclusion can reasonably and fairly be reached. *Geyer* v. *First Arkansas Development Co.*, 245 Ark. 694, 434 S. W. 2d 301; *Peoples Loan & Investment Co.* v. *Booth*, 245 Ark. 146, 431 S. W. 2d 472. Where usury is pleaded, it must be established by clear and convincing evidence and not by a mere preponderance where written instruments are alleged to be something other than that which they appear to be. *Baxter* v. *Jackson*, 193

Ark. 996, 104 S. W. 2d 202; *Commercial Credit Plan* v. *Chandler,* 218 Ark. 966, 239 S. W. 2d 1009.

Appellee seeks to meet his burden to demonstrate the want of a genuine issue as to any material fact by his own affidavit only. The content of that affidavit is not sufficient to require appellants to remove the shielding cloak of formal allegations to demonstrate the existence of a material issue. Appellee's allegation, that the bill of sale and option to repurchase were, in effect, only a pawn-loan agreement, was denied. The bill of sale and option were brought into the record as exhibits to appellants' request for admissions. In his affidavit appellee admits the execution of the bill of sale and his retention of an option to repurchase the diamond ring. The only statement which would tend to show that the transaction was something other than what it appeared on its face to be was: ''I understood the entire transaction to be a pawn-loan agreement.'' This sentence was insufficient to support the summary judgment for many reasons.

In .the first place, appellee's own understanding of the transaction would not show that it was usurious. There must be an intention upon the part of the ''lender'' to take or receive more than the legal rate of interest, or an agreement between the parties by which the borrower promises to pay and the lender knowingly receives a higher rate of interest than the constitution allows. *Peoples Loan* & *Investment Company* v. *Booth,* 245 Ark. 146, 431 S. W. 2d 472.; *Cammack* v. *Runyan Creamery,* 175 Ark. 601, 299 S. W. 1023; *Briant* v. *Carl-Lee Brothers,* 158 Ark. 62, 249 S. W. 577. Sweetser's understanding of the transaction would not tend to convert the transaction into an agreement by appellants to receive an excessive rate of interest or an intention by them to exact such interest.

The statement would not have been admissible in evidence as required by statute. Ark. Stat. Ann. § 29-

211(e) (Supp. 1967). A witness may not testify whether he understood from that which took place between him and another that they assumed a certain contractual relationship, but must state only the facts as to what occurred, not his conclusions. *Bercher* v. *Gunter,* 95 Ark. 155, 128 S. W. 1036.

A supporting affidavit is sufficient only when the *facts* stated therein clearly demonstrate that there is no issue of fact. It cannot consist of statements of legal conclusions and ultimate facts.[1] *Walling* v. *Fairmont Creamery Co.,* 139 F. 2d 318 (8th Cir. 1943); *Engelhard Industries, Inc.* v. *Research Instrumental Corp.,* 324 F. 2d 347 (9th Cir. 1963); *Doff* v. *Brunswick Corp.,* 372 F. 2d 801 (9th Cir. 1967), *cert. denied,* 389 U. S. 820, 88 S. Ct. 39, 19 L. Ed. 2d 71 (1967); 6 Moore's Federal Practice 2808, § 56.22 [1]. Supporting affidavits must be subjected to close scrutiny and any doubts resolved against the moving party. *Walling* v. *Fairmont Creamery Co.,* supra; *Seman* v. *Mumford,* 335 F. 2d 704 (D. C. Cir. 1964); *Bryan* v. *Aetna Casualty & Surety Co.,* 381 F. 2d 872 (8th Cir. 1967); 6 Moore's Federal Practice p. 2338, § 56.15 [3], p. 2853, § 56.23.

When the rules relating to summary judgment are applied in this case, I cannot see how it can be said that the appellee met his burden. The case of *Sparks* v. *Robinson,* 66 Ark. 460, 51 S. W. 460, relied upon by appellee and the majority opinion, does not support summary judgment in this case. In that case the borrower testified that she borrowed $8.00 and understood at the time that she was to pay 80c per month for the use of it. She left a sewing machine with the lender for the sole purpose of borrowing this money. The parties executed an absolute bill of sale for the sewing machine.

---

[1] For example, an affiant cannot be permitted to state that a party operated as an independent contractor and was engaged in the production of goods for commerce where these were the ultimate facts in issue. *Creel* v. *Lone Star Defense Corporation,* 171 F. 2d 964 (5th Cir. 1949). Here the ultimate fact to be determined was whether the transaction was a pawn-loan agreement.

By an endorsement on this ticket, the borrower was given the privilege of purchasing any article of merchandise in the lender's place of business at a price not to exceed 10 percent above its actual cost, within 30 days, with the sewing machine at the price of $8.00 preferred. The proof showed that, at the end of each month, 80c was collected and another sales ticket issued granting the same privilege. The lender did not really contradict this evidence that the transaction involved a loan. He testified that he made no contracts for interest on his loans and trusted to a man's honor what he should pay for the use of money, but that he expected something. In that case there was evidence to support the court's finding that the transaction was a loan of money at an interest rate of 10 percent per month. The court said that the extraneous proof warranted the conclusion that the instrument called bill of sale and sales ticket was intended as a mortgage.

The court's findings in the *Sparks* case were based upon evidence offered upon a contested issue of fact. The borrower there offered testimony as to what took place between the parties and did not let the case rest upon her own conclusional statement that she understood the transaction to be a pawn-loan agreement. It may well be that the transaction here is identical with that in the *Sparks* case, but I do not see how it can be held to be upon the record before the court. I would reverse the summary judgment.

Jones, J., joins in this dissent.