HABACH *v.* JOHNSON.

Opinion delivered February 25, 1918.

1. USURY—PAYMENT TO AGENT OF LENDER.—A transaction is no less usurious because payment is made to the agent of the lender, where the reservation was made by the lender himself.

2. USURY—OFFER TO REMIT.—A suit was brought to enforce a contract, which if enforced according to its terms would result in the exaction of usury; *held,* if the contract was usurious in its inception, no subsequent offer to remit the usury can give it validity.

3. USURY—CONTRACT—CONTRACT TO EXACT INTEREST.—The form of a contract is not material, and a contract will be held usurious if, from all the facts and circumstances in the case, it appears that an intent existed at the time the contract was made to take and receive, by way of interest, a sum of money in excess of that allowed by law.

Appeal from Polk Chancery Court; *Jas. D. Shaver,* Chancellor; affirmed.

*J. I. Alley,* for appellant.

1. There was no intent to charge more than the legal rate of interest. 62 Ark. 380.

2. If there was a mistake of fact, by error in calculation or inadvertence, it is not usury. 25 Ark. 191; 41 *Id.* 331; 62 *Id.* 370.

3. The burden to prove usury is on defendant. Usury is never inferred. 83 Ark. 31; 59 *Id.* 366; 57 *Id.* 251.

4. There is no proof that Ray Worthington was the agent of the lender. 57 Ark. 256; 54 *Id.* 40.

5. The usury, if any, should be purged. 62 Ark. 370.

*H. H. Thomas,* for appellee.

1. The loan was clearly usurious and so intended, and the decree of the chancellor should be sustained. 109 Ark. 69.

2. Worthington was Ellis' agent and his act was ratified by Ellis. 54 Ark. 573; 54 *Id.* 40; 51 *Id.* 546; *Ib.* 534.

3. There was no mistake. 2 Elliott Cont., § 967, p. 269; 50 N. Y. 437; 97 Ala. 417; 165 Mich. 498; 91 Ark. 458.

4. Ignorance of the law is no defense and the transfer gave no validity to the void contract. 41 Ark. 331; 77 *Id.* 103.

5. The offer to purge the usury is unavailing unless a new consideration was had and a new contract made. 62 Ark. 360, 375-6.

6. The loan was usurious under the laws of New York or Arkansas or Oklahoma. 60 Ark. 269; 72 *Id.* 83; 46 *Id.* 50, 66.

7. The findings of the chancellor are sustained by the evidence. 95 Ark. 482.

SMITH, J. George W. Johnson and his wife executed their joint note on March 20, 1912, to Edwin S. Ellis for the sum of $800.00, bearing interest at the rate of six per cent. per annum, payable semi-annually, and due five years from date. They also executed ten notes, for $24.00 each, covering the interest on this loan. The notes were secured by a mortgage on a tract of land owned by the Johnsons, and were assigned, before maturity, for value, to Mrs. Henrietta Habach. Six of these interest notes were paid, when, upon default being made in the payment of the next note to fall due, Mrs. Habach brought suit to foreclose the mortgage which secured its payment. After the complaint had been filed for this purpose, an amendment was filed, in which it was alleged that, by calculation, it had been ascertained that the loan to the Johnsons was usurious; and there was a disclaimer of any intention of taking usury, and a denial of the existence of any such intent at the time the notes were executed; and there was a prayer that plaintiff be allowed to remit any claim for interest beyond that allowed by law. Ellis was the president of the Jefferson Trust Com-

pany, of McAlester, Oklahoma, a corporation engaged in lending money and in negotiating sales of notes for money loaned.

(1)  Johnson applied for this loan to W. A. Worthington, who, according to Johnson's testimony, was the agent of the trust company working for a salary.  He testified that Worthington stated that it was the policy of the trust company to loan money for five years at nine per cent. interest per annum, and Johnson applied for a loan of $800.00 on those terms.  There was offered in evidence a writing signed by Johnson and his wife, in which they agreed to pay Ray A. Worthington the sum of $120.00 for negotiating this loan.  Johnson disclaimed any recollection of having signed this agreement, and testified that he did not know Ray Worthington and that he had had no dealings with him, but that he dealt with W. A. Worthington as the agent of the trust company The loan was approved and the trust company wrote Johnson a letter, which was signed by Ellis in his official capacity, in which it was stated that "Enclosed we hand you check for $680.00, in full payment of your loan after deducting cash commission of $120.00."  Johnson testified that he did not know, until after he had paid six of these interest notes, that the contract was usurious. Johnson insists that this $120.00 as commission was reserved by Ellis himself and that while he does not show that he knows this to be a fact no one testified to the contrary.  But, at any rate, the court might well have found that the agreement to pay the commission to Ray Worthington, who had nothing to do with negotiating the loan, was a subterfuge adopted for the purpose of giving color to a transaction which would otherwise have been usurious on its face.  The court did find that the loan was usurious, and the unpaid notes and the mortgage were canceled.  It is conceded that the execution of the loan contract according to its terms will result in the exaction of usurious interest; and we think the court was warranted in finding that, if this commission was not paid to the lender himself, it was paid to his agent, and, if so,

there can be no question of the lender's knowledge of its retention, for he, himself, reserved the commission. *Banks* v. *Flint,* 54 Ark. 40; *May* v. *Flint,* 54 Ark. 573; *Baird* v. *Millwood,* 51 Ark. 548; *Thompson* v. *Ingram,* 51 Ark. 546.

It is insisted that no intention to take usury is shown. Neither the lender nor any one representing him testified that there had been any inadvertence or mistake of fact or error in calculation which tended to show that there was no such purpose. *Garvin* v. *Linton,* 62 Ark. 380.

(2)  A suit was brought to enforce a contract which if enforced according to its terms resulted in the exaction of usury; and if the contract was usurious in its inception, no subsequent offer to remit the usury can give it validity. It is true, as stated, that an amendment to the complaint was filed in which it was alleged that it was through a mistake of fact that the parties had contracted for usurious interest and that no such intention existed when the loan was made. No testimony was offered in support of these allegations, however. Upon the contrary, it was shown that the lender was largely engaged in the business of negotiating loans of money, one of which loans we held usurious in the case of *Ellis* v. *Terrell,* 109 Ark. 69.

(3)  The form of the contract is not material, but the transaction will be held usurious if, from all the facts and circumstances in the case, it appears that an intent existed at the time the contract was made to take and receive, by way of interest, a sum of money in excess of that allowed by law. Elliott on Contracts, Vol. 2, page 269; *Fiedler* v. *Darrin,* 50 N. Y. 437.

Johnson testified that it was his purpose to pay this debt, less the usury charged, and counsel for appellant asks that this declared purpose be given effect by rendering judgment for the sum due less the usury. We are unable to do so, however, for the reason that the statement made was purely voluntary and without consideration to support it as a valid and binding agreement.

Decree affirmed.